# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRANDON BRUE (#507020)**                                        **CIVIL ACTION**

**VERSUS**

**BURL CAIN, WARDEN**                                       **NO. 13-0060-JWD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petitioner, Brandon Brue, challenges his convictions, entered in 2009 in the Eighteenth Judicial District Court for the Parish of Pointe Coupee, State of Louisiana, on one count of second degree murder, one count of attempted second degree murder, and one count of possession of a firearm by a convicted felon.  The petitioner contends (1) that the trial court erred in allowing the admission into evidence of other crimes evidence, (2) that the trial court erred in allowing into evidence a videotaped hearsay statement by a witness who refused to testify at trial, (3) that the trial court erred in allowing into evidence a written hearsay statement by the deceased victim, (4) that the evidence was insufficient to support the convictions, (5) that his right to confrontation was violated when the trial court allowed into evidence out-of-court statements by a witness who was not subject to cross-examination, (6) that he was denied the right to testify at his trial, (7) that he was provided with ineffective assistance at trial when his attorney prevented the petitioner from testifying at trial, failed to investigate potential alibi witnesses, failed to present a defense, failed to employ compulsory process to

procure the presence of witnesses at trial, and failed to present an alibi defense, and (8) that the cumulative effect of errors at trial deprived him of fundamental fairness.

After a trial by jury conducted in July, 2009, the petitioner was found guilty of having committed the second degree murder of his estranged wife, Yarnell Brue, and the attempted second degree murder of a man who was visiting his wife, Christopher Gremillion, on June 9, 2007. In addition, the petitioner was convicted of being a felon in possession of a firearm in violation of state law. The petitioner was sentenced on August 21, 2009, to life imprisonment in connection with the offense of second degree murder, to fifty years imprisonment in connection with the offense of attempted second degree murder, and to fifteen years imprisonment in connection with the felon-in-possession charge, all without the benefit of probation, parole or suspension of sentence. The court further directed that the sentences were to be served consecutively. The petitioner thereafter appealed his convictions, asserting, through an attorney appointed by the Louisiana Appellate Project, the claims numbered (1) through (4) above. The petitioner thereafter moved for leave to file a supplemental *pro se* appellate brief, and he was granted until March 26, 2010, within which to do so. The petitioner thereafter retained the services of a private attorney, and the new attorney requested and was granted until April 7, 2010, within which to file a supplemental appellate brief. Notwithstanding, the supplemental appellate brief was not in fact received in the First Circuit court until April 9, 2010. On May 7, 2010, the petitioner's convictions and sentences were affirmed by the Louisiana Court of Appeal for the First Circuit. *See State v. Brue,* 39 So.3d 848, 2010 WL 1838383 (La. App. 1st Cir. 2010). In its written opinion, the First Circuit addressed only the claims and arguments made in the initial appellate brief filed on the petitioner's behalf.

2

On or about June 7, 2010, the petitioner submitted an application for supervisory review before the Louisiana Supreme Court on direct appeal.  In that application, the petitioner presented only the claims numbered (1) - (3) and (5), above.  The petitioner notably failed to present his fourth claim regarding the sufficiency of the evidence to support his convictions.  On January 7, 2011, the petitioner's application for supervisory review in the Louisiana Supreme Court was denied without comment.  *State v. Brue*, 52 So.3d 883 (La. 2011).

On or about November 14, 2011, the petitioner filed an application for post-conviction relief in the state district court, asserting the claims numbered (6) through (8), above.  Pursuant to Order dated December 1, 2011, the petitioner's application was denied in the trial court for procedural reasons.  Specifically, the state trial judge ruled that the petitioner's claims should be denied because "he could have and should have raised these issues on appeal [and] [h]e knowingly failed to do so."  Whereas the petitioner sought further review in the state appellate courts relative to that determination, his applications before those courts were denied, on March 12 and December 14, 2012, respectively.  *See State ex rel. Brue v. State*, 104 So.3d 430 (La. 2012).  A subsequent supplemental post-conviction relief application, wherein the petitioner sought further review of his ineffective-assistance-of-counsel claim based upon a purported newly obtained affidavit from his trial attorney, was also rejected in the state district and appellate courts, with the Louisiana First Circuit court denying consideration thereof on December 17, 2012, and with the Louisiana Supreme Court denying consideration thereon of May 31, 2013, as "repetitive."  *See State ex rel. Brue v. State*, 118 So.3d 390 (La. 2013).

On or about January 25, 2013, the petitioner filed the instant application for habeas corpus relief in this Court.  The State asserts that a deferential review of the state court

proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion

that the petitioner's claims must be rejected.

Factual Background

As accurately summarized by the Louisiana First Circuit appellate court in its written

opinion on direct appeal:

> During the early morning hours of June 9, 2007, a shooting occurred at the residence of
> Yarnell Gage Brue, the defendant's wife and deceased victim herein, in Pointe Coupee
> Parish.  Yarnell Brue suffered a gunshot wound to the pelvic area and died of
> exsanguination.  Christopher Gremillion was present at the time of the shooting and
> suffered four gunshots [sic] wounds, specifically one to the left chest wall, one to the right
> buttock, and two to the right forearm, but survived.  After interviewing Gremillion, the
> police determined that the defendant was the suspect in the shooting.  The defendant was
> ultimately arrested and convicted.

It appears from the record that the petitioner left the area shortly after the incident and was not

apprehended until approximately 2½ months later, in late August, 2007, when United States

fugitive task force officials found and arrested him in Dallas, Texas.

In attacking his convictions on direct appeal, the petitioner did not – and does not now –

argue that the shooting did not occur as stated above.  Instead, the petitioner asserted that the

State failed to present competent legal evidence sufficient to identify him as the person who

committed the offenses charged.   Essentially, the petitioner contended that his convictions were

the result of erroneous evidentiary rulings and that, after discounting the highly prejudicial and

inflammatory evidence that should not have been presented before the jury, there was insufficient

evidence to convict him of those offenses.  In addition, in his post-conviction relief proceedings,

the petitioner argued that he was denied his constitutional right to testify on his own behalf at

trial, that he was provided with ineffective assistance of counsel in several respects, and that the

4

cumulative effect of the errors committed at trial deprived him of a fundamentally fair proceeding.

The evidence adduced at trial reflects that no murder weapon was recovered and that there was no forensic evidence that definitively linked the petitioner to the commission of the offenses. Instead, the principal evidence presented before the jury that placed the petitioner at the scene was a videotaped recording of a statement given by the surviving victim, Christopher Gremillion, to police investigators a day or so after the shooting. In that recorded statement, Gremillion identified the petitioner as the person who had shot both him and Yarnell Brue on June 7, 2009. Gremillion was thereafter present at the petitioner's trial and was called to testify for the prosecution. On the witness stand, however, although Gremillion testified under oath that the statements of fact made by him in the recorded statement were truthfully given at the time, he was unwilling to testify further about the events of the shooting. As a result, the prosecution requested that the videotaped statement be played before the jury and, over the objection of the defense, the recorded statement identifying the petitioner as the shooter was played. Upon cross-examination, the petitioner's defense attorney made no attempt to ask any questions of the witness but, upon the witness' assertion that he did not want to testify, released the witness without further objection and without any attempt to compel a response.

In addition to the foregoing, evidence was introduced at trial that, at most, indirectly implicated the petitioner in the commission of the offenses. According to the petitioner, this evidence, described below, was the result of three erroneous evidentiary rulings made by the state trial court that resulted in prejudicial evidence being presented before the jury.

First, over objection, the petitioner's parole officer and two witnesses were called by the prosecution to testify regarding separate and unrelated incidents when the petitioner allegedly

5

discharged firearms in a threatening manner after being involved in disputes with other people. Specifically, the petitioner's parole officer and witness Cody Wells testified regarding an incident that occurred in July, 2005, when the petitioner allegedly discharged a firearm in Wells' direction after an altercation.  According to the petitioner's parole officer, this incident resulted in criminal charges being levied against the petitioner and in the petitioner's subsequent plea of guilty to the offense of illegal use of a weapon or dangerous instrumentality.  In addition, another witness, Revious Harrington, was called to testify that on one occasion in January, 2005, after a verbal disagreement, the petitioner discharged a handgun – into the air the witness believes, not at the witness – as the witness turned away from the altercation.  Whereas the defense argued, in a pretrial hearing conducted pursuant to state law, *see State v. Prieur,* 277 So.2d 126 (La. 1973), that this evidence of other crimes was essentially irrelevant to the offenses involved in the instant case and that the unrelated incidents were presented for no other purpose than to impermissibly portray the petitioner as a person of bad character, the state court accepted the prosecution's argument that the evidence was independently admissible to show the petitioner's *modus operandi, i.e.*, to show that the petitioner had a method or system of confronting people with whom he was having disputes by resorting to firearms.  In conjunction with the testimony of both Wells and Harrington, the trial court provided a limiting instruction to the jury, advising that "[t]he sole purpose for which such evidence may be considered is whether it tends to show intent, system, motive, or a mode of operation.... [and] [y]ou may not find him guilty of this offense merely because he may have committed another offense."  *See* Tr. Transcript at pp. 155 and 161.

    Also over objection, evidence was introduced at trial regarding an alleged incident that occurred approximately a week before the shooting in this case, at which time the deceased victim contacted the police to lodge a complaint against the petitioner.   The court allowed the

6

police officer who was charged with investigating the complaint to testify that the deceased

victim had made the complaint on June 2, 2007, seven days before the shooting of June 9, 2007,

and was supposed to come in and provide a statement about the incident but did not in fact do so.

Instead, the officer testified that he subsequently received a written statement allegedly found in

the deceased's vehicle *after* the shooting, which statement was brought to him by the deceased's

mother.  Whereas the investigating officer provided no factual details regarding the nature of the

statement and complaint, the deceased's mother was allowed to read the victim's statement and to

identify the handwriting as being that of her daughter.  That statement described threats that were

purportedly made to the victim by the petitioner, the victim's fear for her safety, and an incident

when the petitioner purportedly came to the deceased's residence in her absence, ransacked her

belongings, cut the cords to her electronic devices, and placed her clothes in a tub and covered

them with bleach and lighter fluid.  In connection with the reading of the referenced statement,

the trial judge provided a similar limiting instruction to the jury in connection therewith.  Tr.

Transcript at pp. 151-52.

   The only other evidence of note introduced at the trial was the testimony of Jim

Sangsvang regarding the apprehension of the petitioner by federal fugitive task force law

enforcement officials in Dallas 2½ months after the shooting, and a neighbor, Sheena Joseph,

who testified that she heard shots on the night of the incident and looked out her window to

observe a man running from the decedent's home, attempting to pull on a shirt as he ran.  The

neighbor further testified that she telephoned 911 and again looked out her window, at which

time she observed a second man on the porch of the decedent's home.  The witness testified that

the second man, who she believed to be a different person than the first person she had observed

running from the house, re-entered the house from the porch, after which she heard several

additional shots.  Although the witness was familiar with the petitioner, she was unable to positively identify either of the men she observed as the petitioner.

## LEGAL ANALYSIS: CERTAIN CLAIMS PROCEDURALLY BARRED

### The Petitioner's Claim No. 4, Regarding The
### Alleged Insufficiency Of The Evidence, Is Un-Exhausted

As noted above, the plaintiff asserted on direct appeal before the Louisiana First Circuit Court of Appeal that the evidence was insufficient to support his convictions.  Notwithstanding, the petitioner thereafter failed to present this claim when he sought supervisory review before the Louisiana Supreme Court after the convictions and sentences were affirmed by the First Circuit appellate court.  As a result, the Louisiana Supreme Court was not afforded an opportunity to review the petitioner's sufficiency-of-the-evidence claim.

Under 28 U.S.C. § 2254(b) and (c), a claimant seeking habeas corpus relief in federal court is required first to exhaust his claims by presenting them for review before the courts of the state in which he is confined.  The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack.  *Bufalino v. Reno*, 613 F.2d 568, 570 (5th Cir. 1980).  As a general rule, federal habeas corpus relief is available on a habeas petition only when all of the claims in the petition have been exhausted through the state courts.  *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

A district court may notice on its own motion a petitioner's failure to exhaust state court remedies.  *McGee v. Estelle*, 722 F.2d 1206, 1214 (5th Cir. 1984) (*en banc*).  Without reaching the merits of the petitioner's sufficiency-of-the-evidence claim, it is clear from a review of his application that he has not exhausted state court remedies relative to this claim as mandated by federal statute.   Whereas the petitioner asserted this claim on direct appeal to the Louisiana Court

8

of Appeal for the First Circuit, he did not reiterate this claim upon subsequent review before the

Louisiana Supreme Court.  Nor did the petitioner re-assert his sufficiency-of-the-evidence claim

in connection with any of his subsequent post-conviction review proceedings.  Accordingly, this

claim has never been properly presented to the state's highest court, either on direct review or on

post-conviction attack, and it is therefore unexhausted within the meaning of 28 U.S.C. §

2254(b).

A habeas petitioner who has failed to properly present a federal constitutional claim to the

state courts may nonetheless be considered to have "technically exhausted" his state remedies if

the state courts are no longer available for a review of the claim because of a procedural bar.  *See*

*Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004).  A claim is considered to be "technically

exhausted" when state relief is no longer procedurally available in connection with the claim,

without regard to whether the claim was actually exhausted by presentation before the state

courts.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  In such instance, where a

petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would

be required to present his claim[] in order to meet the exhaustion requirement would now find the

claim[] procedurally barred,'" then the claim is technically exhausted and procedurally defaulted

in the state court.  *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), *quoting Coleman v.

Thompson, supra*.  *See also Magouirk v. Phillips*, 144 F.3d 348 (5th Cir. 1998).  Federal review of

the claim is then precluded unless the petitioner can show that the applicable procedural rule is

not regularly followed and "can demonstrate cause for the default and actual prejudice as a result

of the alleged violation of federal law or demonstrate that failure to consider the claims will result

in a fundamental miscarriage of justice."  *Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998);

*Nobles v. Johnson, supra,* 127 F.3d at 423 n. 33; *Williams v. Cain*, 125 F.3d 269, 276 (5ᵗʰ Cir. 1997).[1]

In the instant case, the petitioner has clearly failed to exhaust his sufficiency-of-the-evidence claim before the Louisiana state courts.  Specifically, he has never presented this claim before the Louisiana Supreme Court, either on direct review or through post-conviction review proceedings.  If the petitioner were to now assert this claim before the state courts in an application for post-conviction relief, the state court would unquestionably reject consideration of same as procedurally barred in reliance upon article 930.8 of the Louisiana Code of Criminal Procedure, which article provides a two-year limitations period for the filing of post-conviction review applications in the state court.  Article 930.8 has been found to be an independent and adequate state ground for rejecting consideration of post-conviction relief claims, and the federal courts have relied upon this statute in finding claims to be technically exhausted and procedurally defaulted.  *See, e.g., Williams v. Department of Corrections,* 444 Fed. App. 833, 834 (5ᵗʰ Cir. 2011); *Glover v. Cain*, 128 F.3d 900, 902 (5ᵗʰ Cir. 1997); *Hawkins v. Miller*, 2006 WL 3337503, *4 n. 25 (E.D. La. Nov. 16, 2006); *McDonald v. Cain*, 2006 WL 2990071, *13 (W.D. La., Sept. 8, 2006).  Thus, the referenced claim may be considered to be technically exhausted in the state courts, notwithstanding that it was never properly presented before the Louisiana Supreme Court, and it is also considered to be procedurally defaulted because it would now be subject to dismissal as procedurally deficient if asserted in the state courts.

---

1. The petitioner is hereby specifically instructed that this Report and Recommendation shall constitute notice to him that this Court is *sua sponte* raising the issue of procedural default and that the petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this Report.  *See Magouirk v. Phillips, supra,* 144 F.3d at 359.

The petitioner can overcome the preclusion established by a procedural default only by demonstrating (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson, supra*, 501 U.S. at 750; *Moore v. Roberts,* 83 F.3d 699, 702 (5th Cir. 1996). To establish "cause," the petitioner must show that some objective factor external to the defense prevented him from timely raising his claims in state court. *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992). To establish prejudice, the petitioner must show, "not merely that the [asserted] errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Neither "cause" nor "prejudice" has been shown in the instant case that would support this Court's disregard of his procedural default. Further, to demonstrate that a failure to consider the claim will result in a "fundamental miscarriage of justice," a habeas petitioner must show, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 645 (5th Cir. 1999). To establish such actual innocence, the petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* In the absence of any such showing, the petitioner's sufficiency-of-the-evidence claim is not properly before this Court.

The Petitioner's Claim No. 5, Regarding The Alleged
<u>Violation Of The Confrontation Clause, Is Un-Exhausted In Part</u>

In his initial appellate brief filed before the Louisiana Court of Appeal for the First Circuit, the petitioner presented, as Assignments of Error Nos. 2 and 3, respectively, that "[t]he

trial court erred in allowing the admission of hearsay in the form of videotaped testimony" from Christopher Gremillion and "[t]he trial court erred in allowing the admission of Yarnell Brue's written statement."  As to both assignments, the petitioner's brief principally argued that the statements were inadmissible hearsay evidence under Louisiana law.  Further, the appellate brief also asserted – but only as to the Gremillion statement – that the admission of the referenced videotaped statement violated the petitioner's right to confrontation under the United States Constitution.  In thereafter addressing these two assignments of error, the Louisiana Court of Appeal acknowledged and addressed the Confrontation Clause issue as to Gremillion's statement, but did not do so as to the written statement by the decedent.  Accordingly, this Court concludes that a review of the record reflects that, to the extent that the petitioner now seeks to assert a Confrontation Clause issue relative to the written statement of Yarnell Brue,[2] he failed to fairly present this issue to the intermediate state appellate court.  As such, the Confrontation Clause issue relative to the statement allegedly made by Ms. Brue is unexhausted and, as with the foregoing sufficiency-of-the-evidence claim, is technically exhausted and procedurally defaulted because an assertion of that claim at the present time would be precluded by the two-year limitations period established by article 930.8, La. Code Crim. P.

---

2. A review of the petitioner's pleadings reflects that he has not clearly asserted a Confrontation Clause issue before this Court regarding the written statement of Yarnell Brue.  In addressing the written statement in his argument in connection with Claim No. 3 of his brief, the petitioner only discusses Louisiana state law regarding the admission of "other crimes" and hearsay evidence.  *See* R. Doc. 1-1 at pp. 23-26 and R. Doc. 9 at pp. 6-7.  As to Claim No. 5, the petitioner provides no substantive argument whatever in connection with this Claim before this Court.  *See* R. Doc. 1-1 at p. 31 (where he re-characterizes his Claim No. 5 as involving his right to testify at trial) and R. Doc. 9 at pp. 7-8 (where he omits any discussion in connection with Claim No. 5).  Accordingly, whereas the petitioner adequately asserts a Confrontation Clause argument in connection with his discussion of the videotaped statement of Christopher Gremillion (addressed in Claim No. 2), he has not clearly presented a Confrontation Clause argument in connection with the handwritten statement of Yarnell Brue.

Whereas the petitioner in this case may wish to argue that the substance of the Confrontation Clause issue (relative to the Yarnell Brue statement) was presented to the state appellate court in his initial appellate brief, this Court disagrees.  The United States Supreme Court has concluded that, in order for a claim to be considered "fairly presented," a petitioner must present the state court with "the same claim he urges upon the federal courts."  *Picard v. Connor*, 404 U.S. 270, 276 (1971).  While it is not necessary to recite "book and verse" at the state court level, the constitutional claim that the petitioner is pursuing in federal court must be the "substantial equivalent" of the claim brought in state court.  *Id.* at 278.  It is not enough that all of the facts necessary to support the federal claim were before the state court.  *Anderson v. Heirless*, 459 U.S. 4, 6 (1982).  Thus, where a petitioner raises an issue that is entirely dependent on an interpretation of state law, a state habeas court is not apprised of the possibility that such a claim may also present a federal constitutional issue.  *See Duncan v. Henry*, 513 U.S. 364 (1995) (finding that where a petitioner raised only an issue of state evidentiary law, the petitioner had not fairly presented a claim that the evidentiary violation was also a violation of federal constitutional law).  In the instant case, therefore, inasmuch as the petitioner's initial appellate brief presented an argument based entirely upon state law (as to the Yarnell Brue statement) and made no mention of the federal constitution, the Court finds that the Confrontation Clause issue was not "fairly presented" to the state courts relative to that statement.

The petitioner may also wish to argue that the Confrontation Clause issue was squarely presented to the intermediate appellate court by virtue of a supplemental appellate brief filed by his retained attorney.  Again this Court does not agree.  Instead, the record reflects that the petitioner's supplemental brief was not timely filed and that the arguments asserted therein were not considered or addressed by the appellate court.  In this regard, the supplemental state court

record reflects that after the filing of an initial appellate brief, the petitioner moved in the appellate court for leave to file a *pro se* appellate brief.  Pursuant to Order dated February 25, 2010, the state appellate court granted the petitioner leave to file a *pro se* brief and granted him an extension of time, until March 26, 2010, within which to do so.  The petitioner thereafter retained separate counsel, and his newly enrolled attorney moved for a second extension of time within which to file a supplemental brief.  It appears from the record that this request was also granted, and that the attorney was allowed until April 7, 2010, to file a supplemental brief on behalf of the petitioner.  Notwithstanding, the petitioner's retained attorney did not apparently meet this deadline.  Instead, it appears from the record and from representations made by the attorney in a subsequent motion, that he merely "metered" the supplemental appellate brief at the post office in New Orleans, Louisiana, on April 7, 2010, and deposited it there on that date, admittedly "after business hours," for mailing to the appellate court.  As a result, the supplemental appellate brief was not apparently received in the appellate court until, at the earliest, April 9, 2010, two days after the due date, and was not apparently considered or addressed by the appellate court.  This conclusion is bolstered by the fact that the subsequent opinion of the appellate court makes no mention of the supplemental appellate brief and instead addresses only the specific arguments and the four Assignments of Error, so denominated, presented in the petitioner's initial appellate brief.  In addition, it does not appear from the record that any argument was made by the petitioner's attorney that the supplemental appellate brief should be considered to be timely filed.  Nor does it appear that there could be such argument. *See* Rule 2-13 of the Uniform Rules, Courts of Appeal for the State of Louisiana:

> Filing may be accomplished by delivery or by mail addressed to the clerk.  The filing of such papers shall be deemed timely when the papers are mailed on or before the due date. If the papers are received by mail on the first legal day following the expiration of the

14

delay, there shall be a rebuttable presumption that they were timely filed.  In all cases where the presumption does not apply, the timeliness of the mailing shall be shown only by an official United States postmark or cancellation stamp or by official receipt or certificate from the United States Postal Service or bonafide commercial mail services such as Federal Express or United Parcel Service, made at the time of mailing which indicates the date thereof.  Any other dated stamp, such as a private commercial mail meter stamp, shall not be used to establish timeliness.

In the instant case, pursuant to the cited Rule, the rebuttable presumption of timely filing does not apply because the supplemental appellate brief was not received by the appellate court "on the first legal day following the expiration of the delay," and it also does not appear that any "official" showing was made, by way of postmark, cancellation stamp or the like, that the brief was timely submitted.  Thus, the Court concludes that the petitioner's claim that his rights under the Confrontation Clause were violated by the admission into evidence of the purported written statement of Yarnell Brue was not fairly presented or addressed by the state appellate court and, as such, this claim is technically exhausted and procedurally defaulted before this Court.[3]

<u>The Petitioner's Claims Nos. 6 Through 8 Are Procedurally Defaulted</u>

The Court turns next to a consideration of the petitioner's claims numbered 6 through 8 in his federal habeas corpus application, *i.e.,* his claims (1) that his Fourteenth Amendment right to due process was violated because he was denied the right to testify at trial, (2) that he was provided with ineffective assistance of counsel at trial because his attorney (a) prevented the petitioner from testifying at trial, (b) failed to investigate potential alibi witnesses, (c) failed to present a defense, (d) failed to employ compulsory process to procure the presence of witnesses at trial, and (e) failed to present an alibi defense, and (3) that cumulative errors at trial rendered

_____

3.  As with the petitioner's sufficiency-of-the-evidence claim, the Court finds that there is no showing of "cause" and "prejudice" sufficient to defeat the application of the procedural bar, and no showing that a failure to consider the claim will result in a "fundamental miscarriage of justice."

the proceedings fundamentally unfair.  The Court finds that these claims, although exhausted

through the state courts, are subject to dismissal by reason of procedural default.  Specifically,

whereas the petitioner raised these claims in his application for post-conviction relief in the state

trial court and in his subsequent applications for supervisory review before the state appellate

courts, the claims were not substantively addressed because they were found to be procedurally

barred.  Specifically, in denying the petitioner's post-conviction relief application on December

1, 2011, the trial judge stated that relief was denied because the petitioner "could have and should

have raised these issues on appeal ... [and] knowingly failed to do so."  In making this

determination, the trial court implicitly relied upon article 930.4(C) of the Louisiana Code of

Criminal Procedure, which provides that claims made in an application for post-conviction relief

may be rejected if they could have been raised on appeal but were not.  The trial court in this case

specifically rejected the petitioner's post-conviction relief claims for this reason.  Thereafter,

when these issues were presented before the state appellate courts on request for supervisory

review, the appellate courts declined to accept review.  Accordingly, it is clear that the last state

court to review these issues relied on a procedural rule in denying consideration of these claims.

　　　When a state court decision to deny post-conviction relief rests on a state procedural

ground that is independent of the federal question raised by the petitioner and is adequate to

support the judgment, the federal court lacks jurisdiction to review the merits of the petitioner's

federal claims.  *Coleman v. Thompson*, *supra*, 501 U.S. 722, 729 (1991); *Moore v. Roberts*,

*supra,* 83 F.3d 699, 701 (5th Cir. 1996).  The independent and adequate state ground doctrine

"applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims

because the prisoner ha[s] failed to meet a state procedural requirement."  *Coleman v. Thompson,*

*supra*, 501 U.S. at 729-730:

In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731-32, *citing Rose v. Lundy*, 455 U.S. 509, 518, (1982); *Moore v. Roberts, supra*, 83 F.3d at 703. This rule applies even if the state court addresses the substance of the claim in the alternative. *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999).

For the independent and adequate state ground doctrine to apply, the state court adjudication of a habeas petitioner's claim must have been, as here, based on a state procedural rule. *Moore v. Roberts, supra*, 83 F.3d at 702; *Sones v. Harbett*, 61 F.3d 410, 416 (5th Cir. 1995). The procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." *Id.* The petitioner can rebut this presumption only by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, as with the technically exhausted issues addressed above, by demonstrating (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson, supra*, 501 U.S. at 750; *Moore v. Roberts, supra*, 83 F.3d at 702.

The Court has previously determined that the petitioner has failed to show cause and actual prejudice resulting from the alleged violation of federal law or that a failure to consider his claims will result in a fundamental miscarriage of justice. Further, this Court finds that article 930.4 is regularly followed under circumstances substantially similar to that presented herein. *See Parks v. Cain*, 2014 WL 505329, *8 (E.D. La. Feb. 6, 2014 ) (applying procedural bar in

17

connection with a claim that the petitioner was not allowed to testify at trial); *Simmons v. Cain*, 2008 WL 2185422 (E.D. La. May 20, 2008) (same); *Jones v. Cain*, 2010 WL 3312592, 5-6 (E.D. La. July 29, 2010) (applying procedural bar in connection with a claim of ineffective assistance of counsel); *Smith v. Cain*, 2013 WL 6669816, *4 (E.D. La. Dec. 18, 2013) (same).  Even a discretionary state procedural rule can qualify as an adequate basis for barring federal habeas review.  *Coleman v. Cain*, 2014 WL 348541, *5 (E.D. La. Jan. 31, 2014), *citing Beard v. Kindler*, 558 U.S. 53 (2009).  As stated in *Beard, supra*, "a discretionary rule can be 'firmly established' and 'regularly followed' – even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not in others."  558 U.S. at 60-61. Accordingly, this Court finds that the state court's express invocation of the procedural rule to dispense with a substantive consideration of the petitioner's claims asserted on post-conviction review acts as an independent and adequate bar that precludes this Court's consideration thereof.

In addition to the foregoing, and in the alternative, even were this Court to conclude, in connection with the petitioner's Claim No. 7 – regarding the alleged ineffective assistance of his trial attorney – that article 930.4 is not adequate in this context to operate as an effective procedural bar,[4] the Court would nonetheless recommend dismissal of this claim upon substantive review.  In this regard, a habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the

---

4.  *See Graffia v. Cain*, 2010 WL 3952027, *10-11 (E.D. La. July 28, 2010) (finding article 930.4 to be inadequate in the context of a claim of ineffective assistance of counsel); *Orange v. Cain*, 2009 WL 938909, *8 (E.D. La. April 6, 2009) (same); *Bell v. Cain*, 2002 WL 31002831, *8 (E.D. La. Aug. 29, 2002) (same).

18

deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter, supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh, supra*, 838 F.2d at 773; *Martin v. McCotter, supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington, supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter, supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered

19

the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id.* at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

      The above showing is one that the petitioner cannot make in the instant case. Applying the above standard to the petitioner's claim that his trial counsel was ineffective for failing to allow the petitioner to testify at trial, the petitioner provides only a conclusory assertion relative to such failure. It is recognized in this context, however, that more than a mere self-serving and conclusory assertion that an attorney prohibited his client from testifying is required before a Court can give serious consideration to such a claim. *See Parks v. Cain, supra,* 2014 WL 505329, at \*9. It is the petitioner's burden of proof to show that he was denied this constitutional right, and "a petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." *See id.* at 9, *quoting Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991). Whereas the petitioner has presented this Court with an affidavit executed by his trial attorney, that affidavit states only that the attorney "*advised* Brandon Brue, against his wishes, not to take the stand in his own defense." *See* R. Doc. 1-5 at p. 3. Considering that it is common practice for criminal attorneys, with good reason, to advise their clients not to testify, it was not an unreasonable strategic decision to recommend that the petitioner not do so. The plaintiff concedes that his attorney informed him that it was the attorney's belief that the State had not met its burden of proof in presenting evidence sufficient to

show the petitioner's guilt beyond a reasonable doubt, and this was not an unreasonable conclusion in light of the evidence presented by the State in the case.  Had the petitioner taken the stand, he undoubtedly would have been subjected to blistering cross-examination regarding his prior felony conviction, the shooting incidents involving Cody Wells and Revious Harrington, his estrangement from his wife, his alleged threats and harassment directed at her during the week prior to the homicide, and the fact that he fled the area immediately after the shooting.  It was thus not an unreasonable strategic decision for the petitioner's attorney to refrain from calling the petitioner to the witness stand.

In addition to the foregoing, the petitioner is unable to show prejudice resulting from his attorney's alleged misconduct in this regard.  In other words, the petitioner has not shown a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different or shown a probability that the asserted errors are "sufficient to undermine confidence in the outcome."  Thus, the petitioner has failed to meet his burden of proof relative to this claim.

For similar reasons, the petitioner has failed to show that it was an unreasonable strategic determination to refrain from calling the petitioner's alibi witnesses at trial.  In the first place, whereas the petitioner complains that his attorney failed to investigate these witnesses or utilize compulsory process to obtain their presence at trial, the petitioner has provided the Court with an affidavit executed by his attorney wherein the attorney attests, to the contrary, that he "did investigate [the petitioner's] alibi witnesses" but "did not call [them]," contrary to the petitioner's wish for him to do so.  *See* R. Doc. 1-5 at p. 3.  Further, whereas the petitioner asserts that his attorney failed to employ compulsory process to obtain the presence of the alibi witnesses, the petitioner nonetheless concedes that the witnesses were present at trial and were available to

21

testify if called.  Thus, there was no apparent need to employ compulsory process to procure their presence.  In addition, whereas the petitioner devotes considerable attention to the asserted failure of his attorney to preserve an alibi defense by failing to file a timely notice of such defense in accordance with state procedural law, the record reflects, to the contrary, that the attorney did in fact file a timely Notice of Alibi Defense, identifying each of the petitioner's proposed alibi witnesses by name and address and providing the substance of their anticipated testimony.  It is instead apparent that the petitioner's attorney made the strategic determination that, on balance, the presentation of the alibi testimony may not have been beneficial, perhaps because the alibi witnesses would have testified that they and the petitioner had been "shooting dice" all night at a local residence and that the petitioner, when he allegedly learned of the shooting, had made statements that referred to yet another violent incident in which he had been involved and in which he had been shot and his "brother" killed.  *See* affidavits of Jermaine Johnson, Chad George and Jeremiah Brue, R. Doc. 1-5 at pp. 4-6.  *See also State v. Williams*, 2008 WL 6809584 (La. App. 1st Cir. Dec. 23, 2008) (wherein the referenced shooting incident is chronicled).  In this Court's view, this was not an unreasonable strategic determination in light of the posture of the case.  Further, and in any event, even were the petitioner to prove successful in asserting that his counsel's performance was deficient in this regard, he is unquestionably unable to establish prejudice resulting from such deficiency.  Accordingly, there is no merit in the petitioner's assertion in this regard.

<u>SUBSTANTIVE REVIEW OF THE PETITIONER'S REMAINING CLAIMS:</u>

Turning to a substantive consideration of the petitioner's remaining claims, the standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).  Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state

court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor, supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief.

The Petitioner's Claim No. 1, Regarding The Alleged<br>
<u>Erroneous Admission Of Other Crimes Evidence, Is Without Merit</u>

Addressing the petitioner's claim regarding the alleged erroneous admission of "other crimes" evidence, the Court begins with the premise that a federal habeas court provides relief only when the petitioner is found to be "in custody pursuant to the judgment of a State court only

on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 254(a). Thus, a federal habeas court asks only whether a constitutional violation infected the trial. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). An error in the application of state law by the trial court does not provide grounds for habeas relief. *Engle v. Isaac*, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under [state] law, they allege no deprivation of federal rights and may not obtain habeas relief"). Accordingly, to the extent that the foundation of the petitioner's habeas application rests on the proper interpretation and application of state jurisprudence and rules of evidence, this is not an issue within the scope of federal habeas corpus review.

In addition to the foregoing, a federal habeas review of the admission of evidence is limited to whether the state court's evidentiary rulings were sufficiently egregious to render the trial fundamentally unfair or to violate an explicit constitutional right. *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991); *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989). To meet this test, the challenged evidence must be "a crucial, critical, or highly significant factor in the context of the entire trial." *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987).

The first component of the petitioner's claim regarding the admission of other crimes evidence is that the trial court erred in admitting testimony from the petitioner's parole officer and witness Cody Wells that the petitioner had discharged a firearm at Wells in July, 2005, after an altercation between the two, and that the petitioner was thereafter convicted, upon a plea of guilty, to the felony offense of illegal use of a weapon or dangerous instrumentality. On direct appeal, the First Circuit addressed this claim and concluded that the evidence relative to this incident was not inadmissible other crimes evidence. To the contrary, inasmuch as the petitioner

was jointly charged in the instant case with the offense of being a felon in possession of a firearm in violation of state law, the evidence regarding the prior felony conviction was "independently relevant because it satisfie[d] an element of LSA-R.S. 14:95.1, a previous felony conviction within ten years." This was not an erroneous determination under either state or federal law. In addition, the Court notes that the testimony provided by Wells at trial was of limited evidentiary or prejudicial value. Specifically, Wells testified that he had no specific recollection regarding the incident, other than that he had possibly been in a fight with the petitioner and had completed a police report.

The plaintiff also complains that evidence was erroneously admitted at trial regarding a second shooting incident, specifically evidence regarding an incident that allegedly occurred on January 29, 2005, when the petitioner discharged a firearm, apparently into the air, after a verbal confrontation with witness Revious Harrington. Whereas the state district court determined that this evidence was admissible based upon a finding that it tended to show a typical method of operation by the petitioner when involved in conflict, the appellate court concluded that the evidence was improperly admitted at trial. Specifically, the appellate court found that the prior shooting incident was "too remote in time," was not shown to involve the same caliber of weapon, and did not have "peculiarly distinctive features" so as to be sufficiently similar to the offenses at issue as to constitute substantive proof that the petitioner committed the offenses charged. Notwithstanding, the state appellate court further concluded, upon a review of the record in its entirety, that although improperly admitted, the evidence of the prior incident was "harmless error" and that the jury's verdicts were based principally upon the eyewitness identification of the petitioner as the shooter by Christopher Gremillion. Accordingly, the

25

appellate court concluded that the verdicts "were  surely unattributable to the erroneously introduced evidence" and that the admission of the evidence did not constitute reversible error.

Accepting the state appellate court's determination that the referenced evidence was improperly admitted under state law, this Court turns to a consideration whether the state court's determination that the error was harmless is supportable or whether the evidence should be found to have had a substantial and injurious effect or influence in determining the jury's verdicts under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *See Corwin v. Johnson*, 150 F.3d 467, 476 (5th Cir. 1998) (assuming that an admission of evidence constituted error and determining whether the petitioner was entitled to federal habeas relief under *Brecht*).  The Fifth Circuit has articulated the *Brecht* standard as follows:

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is *more* than a mere reasonable possibility that it contributed to the verdict.  It must have had a *substantial* effect or influence in determining the verdict. We recognize, however, that if our minds are in virtual equipoise as to the harmlessness, under the *Brecht* standard, of the error, then we must conclude that it was harmful. Moreover, the *Brecht* standard does not require in order for the error to be held harmful that there be a reasonable probability that absent the error the result would have been different.

*Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996) (internal citations and quotation marks omitted).

Applying the foregoing standard, the Court concludes that the state court did not unreasonably apply federal law in determining that the erroneous admission of Harrington's testimony was harmless error.  Specifically, the state trial court provided a limiting instruction to the jury at the time of Harrington's testimony, jurors are presumed to follow such limiting instructions.  *See United States v. Acosta*, 475 F.3d 677, 683 (5th Cir. 2007), *citing United States v. Bieganowski*, 313 F.3d 264, 288 (5th Cir. 2002).  Further, Harrington's testimony was in fact

26

very limited in nature.  Harrington acknowledged that he knew nothing about the offenses for

which the petitioner was then on trial, and the totality of Harrington's testimony was that he and

the petitioner had been involved in a "misunderstanding" in January, 2005, more than two years

before the shooting at issue in this case, after which the petitioner had "shot a gun up in the air"

as the witness turned and walked away.  Tr. Transcript at p. 156.  According to the witness, "that

was all it was to it, and we all got friends again."  *Id.*  This evidence was clearly of limited

evidentiary importance in the case and, in light of the eyewitness testimony of Christopher

Gremillion, who identified the petitioner as to the person who committed the offenses, the

testimony of Harrington may not be seen to have been "a crucial, critical, or highly significant

factor in the context of the entire trial."

     Finally, the petitioner complains of the erroneous admission into evidence of a purported

handwritten statement by the deceased in this case, Yarnell Brue, that included both evidence of

other offenses allegedly committed by the accused and also evidence that was excludable as

hearsay under state law.  The Court will address the petitioner's arguments relative to this

statement, as did the state appellate court, in addressing the petitioner's claim number 3, *infra*.

The Petitioner's Claims No. 2 and 5, Regarding The<br>
Introduction Of Christopher Gremillion's Videotaped Out-Of-Court Statement<br>
<u>In Violation Of The Hearsay Rule And The Confrontation Clause, Is Without Merit</u>

     A review of the record reflects that the prosecution called the lone surviving eyewitness to

the shooting, Christopher Gremillion, to the stand and questioned him about the events of June 9,

2007.  It became immediately apparent, however, that the witness was unwilling to cooperate and

was resistant to questioning.  Whereas the prosecution was able to elicit from the witness that he

had provided a videotaped statement to investigators a day or so after the incident, and whereas

the witness further acknowledged, under oath, that the information provided in that statement had

27

been truthful, Gremillion stated in response to further questioning that he didn't want to say anything further.  After several unsuccessful attempts at questioning the witness, the prosecution requested that the videotaped statement be played for the jury.  The defense objected to this request, but failed to state the nature of the contemporaneous objection.[5]  Notwithstanding, the trial court allowed the videotape to be played and, in the videotaped statement, Gremillion clearly and unequivocally identified the petitioner as having been the person who shot both him and Yarnell Brue.  The witness asserted in the videotape that he knew the petitioner well, was able to see the petitioner clearly, and remembered what had occurred during the incident.  Specifically, Gremillion stated in the videotape that he and the deceased had been sitting on the bed in the deceased's residence when the petitioner kicked in the door to the house without warning, turned on the lights and, without saying anything, proceeded to shoot Gremillion four times and Yarnell once from a short distance away.  Gremillion was clear and unequivocal in identifying the petitioner as the person who had committed the offenses.  Upon the conclusion of the videotape, the prosecution tendered the witness to the defense.

Despite the opportunity that was then offered to the defense to cross-examine Christopher Gremillion, the defense did not avail itself of the opportunity.  Instead, the totality of the exchange between the petitioner's attorney and Christopher Gremillion was as follows:

> Defense:      Good afternoon.... I take it you don't want to testify with me asking questions, either?
>
> Gremillion:   I don't wanna testify to nothing dealing with none of this.

---

5. On appellate review, the Louisiana First Circuit Court of Appeal concluded that the petitioner's attorney had likely failed to preserve the substance of this contemporaneous objection for appeal because the attorney had failed to provide the grounds for the objection as required under Louisiana law.  The appellate court nonetheless addressed the petitioner's claim.

> Defense:      Thank you.

*Id.* at p. 140. Based upon the above recitation, the petitioner contends that his constitutional

rights were violated by the admission into evidence of the referenced videotape.

Initially, as noted above, this Court does not sit to evaluate errors of state law committed

by state trial courts in the application of state rules of evidence. States are entitled to enact their

own rules of evidence regarding the admission of out-of-court hearsay statements, and the federal

courts will not second-guess those rules unless the admission of evidence runs afoul of a specific

constitutional right or otherwise renders the proceedings fundamentally unfair. In the instant

case, the state appellate court determined that the recorded statement of Christopher Gremillion

was admissible under article 801(D)(1)(c) of the Louisiana Code of Evidence, which provides

that a statement is not hearsay under Louisiana law if the declarant testifies at the trial and is

subject to cross-examination, and the statement is one of identification of a person made after

perceiving the person. As stated by the appellate court in analyzing this provision:

> [W]e find that the evidence in question did not constitute hearsay.

> Louisiana Code of Evidence article 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible except as otherwise provided by the Louisiana Code of Evidence or other legislation. LSA-C.E. art. 802.

> Louisiana Code of Evidence article 801(d)(1)(c), Louisiana's counterpart of Fed. R. Evid. 801(d)(1)(C), provides that a prior statement by a witness is not hearsay if the declarant testifies at trial and is subject to cross-examination and the statement offered is one of identification of a person made after perceiving the person. A prior statement by a witness that is one of identification of a person made after perceiving the person may be used assertively, as substantive evidence of guilt even if the witness denies making an identification or fails or is unable to make an in-court identification.... *See United States v. Brink*, 39 F.3d 419, 426 (3rd Cir. 1994) ("'If at trial the eyewitness fails to remember or denies that he made the identification, the previous statements of the eyewitness can be proved by the testimony of a person to whom the statement was made, and the statement

can be given substantive effect.'") (*quoting* Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence, § 801(d)(1)(C), at 801-222 (1993))....

Accordingly, when in the instant case Gremillion failed to make an in-court identification, his prior statement was rightfully used as substantive evidence of the defendant's guilt. Gremillion's statement consisted of an identification of the defendant as the perpetrator of the instant offenses made after perceiving the defendant. Accordingly, the trial court did not err in overruling the defense's objection to the admissibility of this evidence.

*State v. Brue, supra,* 2010 WL 1838383 at p. 10.

As explained above, this Court will not second-guess the state court's application of state evidentiary rules. Notwithstanding, the petitioner contends that the admission of Gremillion's videotaped statement runs afoul of the specific protections afforded by the Confrontation Clause of the United States Constitution and specifically of the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Supreme Court examined the history of the Confrontation Clause and concluded that a bright-line evidentiary rule was appropriate when addressing testimonial out-of-court statements made by persons who were unavailable for cross-examination, regardless of the perceived reliability of the statements or the application of traditional hearsay exceptions. Thus, the *Crawford* Court held that an out-of-court statement by a witness that is "testimonial" in nature is barred under the Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *Id.* at 54. The *Crawford* Court explained that the Confrontation Clause applies to witnesses who "bear testimony," and the Court explained that "testimony" is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (citation omitted). Whereas the Court was unwilling to provide a definitive definition of "testimonial," the Court opined that, for example, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an

acquaintance does not." *Id.* The Supreme Court also listed several "core" classes of traditionally-recognized "testimonial" statements as including (1) "*ex parte* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," (4) "*ex parte* testimony at a preliminary hearing," and (5) "[s]tatements taken by police officers in the course of interrogations." *Id.* at 51-52. *See also Davis v. Washington*, 547 U.S. 813, 827 (2006) (finding that the admission of statements made to a 911 operator while events were unfolding during a domestic dispute did not violate the Confrontation Clause, but suggesting that such statements to police investigators or representatives might be considered to be "testimonial" or might become so as the circumstances develop and "objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution").

In the instant case, the Court will assume that the videotaped statement provided by Christopher Gremillion was "testimonial" in nature. It was provided to police officers during the course of a formal investigation into the events of June 9, 2010, and it was not elicited under emergency circumstances, such as where the perpetrator was believed to be armed and potentially at large and dangerous to the general public. Cf., *Michigan v. Bryant*, 562 U.S. 344, 363-64 (2011) (finding that a statement elicited from a witness by police officers while the witness lay

bleeding on the ground in a parking lot was non-testimonial for purposes of a Confrontation

Clause analysis because of the emergency nature of the questioning and response).

A determination by this Court that the videotaped statement provided by Christopher

Gremillion was "testimonial" for purposes of the Confrontation Clause, however, does not end

the inquiry.  To the contrary, this Court concludes that there was no Confrontation Clause

violation in this context because the witness was in fact available to testify and was in fact subject

to cross-examination relative to his prior statement.  The mere fact that the petitioner's attorney

made no attempt whatever to elicit further responses from the witness on the stand during cross-

examination does not lead to a conclusion that the witness was unavailable for purposes of the

Confrontation Clause.  Thus, as found by the state appellate court:

> In the instant case, Christopher Gremillion was called to testify at trial and was sworn in
> as a witness.  Gremillion answered some questions, but failed to answer others; he was
> available for cross-examination.  However, when Gremillion was tendered to counsel for
> defendant for cross-examination, defense counsel addressed him as follows: "Good
> afternoon....  I take it you don't want to testify with me asking you questions, either?"
> Gremillion replied, "I don't wanna testify to nothing dealing with none of this."  Defense
> counsel then thanked Gremillion and the court allowed Gremillion to leave the stand.
> This court does not deem this interchange as establishing that the witness was unavailable
> for cross-examination for purposes of LSA-C.E. art. 901(D)(1)(c).  Gremillion was not
> accused of a crime.  He did not, nor was he entitled to invoke his privilege against self-
> incrimination in justification of his failure to respond to questioning at trial.  Moreover,
> defense counsel did not attempt to cross-examine the witness.  If cross-examination had
> been attempted and Gremillion had refused to answer defense counsel's questions,
> counsel for defendant could have asked the trial court to instruct the witness to testify.
> Continued failure to answer defense questions could have been addressed through the
> contempt process.

*State v. Brue, supra,* 2010 WL 1838383 at p. 10, n. 7.  *See also* LSA-C.E. art. 804(A)(2),

defining "unavailability" to include a witness who "[p]ersists in refusing to testify concerning the

subject matter of his statement despite an order of the court to do so."  Accordingly, evaluating

all of the facts in this case, the Court concludes that the introduction into evidence of the

videotaped statement by Christopher Gremillion – when the witness was both available and

subject to cross-examination  – may not be seen to have run afoul of the Confrontation Clause

under *Crawford* and its progeny, and such claim should therefore be dismissed for lack of merit.

The Petitioner's Claim No. 3, Regarding The Introduction<br>
Of The Out-Of-Court Statement Purportedly Written By Yarnell Brue That<br>
<u>Both Referred To Other Crimes Of The Petitioner And Violated The Hearsay Rule</u>

Finally, the Court turns to a consideration of the petitioner's contention that the trial court

erred by allowing into evidence the handwritten statement purportedly written by Yarnell Brue

during the week prior to the commission of the offenses in question.  The mother of the decedent

testified that she discovered the statement in the glove compartment of her daughter's car after

the shooting and that the statement was written in her daughter's handwriting.  The substance of

the referenced statement read to the jury was as follows:

> I, Yarnell Brue, am writing this statement because my husband, Brandon Brue, called my job at Walmart three times and threatened to kill me, which you never could underestimate what he may not do because he is very abusive towards me.  Upon him calling my job, he brought my car back to Walmart in the parking lot, set my alarm, and locked my keys in the car.  When I got home, I couldn't get into my home because he had jammed the door.  As I tried to enter the back door, I couldn't because he had put a board behind the door so I couldn't get in.  When I did – when I did get into my home, it was ram-schacked.  He emptied all my food from out of my refrigerator, put my clothes in the tub, and emptied clorox and lighter fluid all over my clothes.  He ... cut the plugs on the – on my TV's, computer, stereo, all electronics and broke my DVD's in half.  It seems as if he was planning to burn – burn me in my own home.  He told me that if I called the police, he would get his girls for me.  Right now I am just scared that he is going to try and kill me.  Enough is enough.  I just got – I just had a miscarriage.  I had surgery on the 25th of this month, and I haven't even been on my first appointment yet.  My body hadn't completely healed yet.  I am just scared what he may – I might be scared if what he may do to me or get someone else to do.  He stole my money, and destroyed everything of mine.  He took all of his things, and messed up mine, and I don't have nothing, and I work very hard for my things for him to just destroy them, and I am renting this home.  It is not even mine, and he has destroyed it.  Yarnell Brue.

Tr. Transcript at pp. 150-51.  In addressing this statement, the intermediate appellate court

concluded that the statement had been admitted in error.  Specifically, the appellate court found

33

both that there was insufficient proof that the petitioner had committed the acts described in the statement and that the statement was inadmissible hearsay under LSA-C.E. art. 803.  In reaching this conclusion, the court conducted a balancing test and concluded that "any relevancy of the evidence at issue, tending to establish Yarnell's state of mind, was outweighed by the inadmissible aspect of the statement; *i.e.* that it was true that the defendant intended to, and therefore did, harm Yarnell."  Notwithstanding, the court further found that the admission of the statement constituted harmless error:

> [B]ecause of the overwhelming weight of Gremillion's positive identification of the defendant as having shot him and Yarnell, we determine that the verdict actually rendered in this case was surely unattributable to any error associated with the admission of Yarnell's handwritten statement.  Accordingly, we find that the introduction of this evidence was harmless and does not constitute reversible error.

*State v. Brue, supra,* 2010 WL 1838383 at *13.

Assuming that the referenced Yarnell Brue statement was in fact admitted in error, this Court must determine whether the state court's determination that the error was harmless is supportable or whether the admission of the evidence rendered the trial fundamentally unfair. *See Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011).  The task in such instance is to determine – based upon a careful review of the record as a whole – whether the petitioner has successfully established that the challenged evidence "played a crucial, critical, and highly significant role in the trial."  *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998); *Thomas v. Lynaugh*, 812 F.2d 225, 230-31 (5th Cir. 1987).  "Due process is implicated only for rulings 'of such a magnitude' or 'so egregious' that they 'render the trial fundamentally unfair.'"  *Gonzales v. Thaler, supra*, 643 F.3d at 430.  "[T]he Due Process Clause does not afford relief where the challenged evidence was not the principal focus at trial and the errors were not 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'  This is a high hurdle, even

without AEDPA's added level of deference." *Id.* at 431.  The question whether inadmissible hearsay evidence was harmless or actually had a substantial and injurious effect or influence upon the jury's guilty verdict depends on a number of factors, including (1) the importance of the evidence in the prosecution's case, (2) whether the evidence was cumulative, (3) the presence or absence of other evidence corroborating or contradicting the evidence, and (4) the overall strength of the prosecution's case against the petitioner. *Cupit v. Whitley*, 28 F.3d 532, 539 (5th Cir. 1994).  Of these, the strength of the prosecution's case is probably the single most important factor in determining whether the error was harmless.  *Id.* at 539.

Under *Brecht v. Abrahamson, supra*, "a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict." *Nixon v. Epps*, 405 F.3d 318, 329-30 (5th Cir. 2005).  It is only when the record is so evenly balanced that there is grave doubt as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict that the error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Although the issue is a close one in this case, the Court nonetheless finds that the petitioner has not established error of such magnitude as to undermine confidence in the jury's verdict and to overcome the deference afforded to the state court determination that the error in this case was harmless.  The jury had before it the unequivocal and unrefuted identification of the petitioner as the shooter that was provided by Christopher Gremillion.  Evidence provided by a single eyewitness may be sufficient to support a conviction for second-degree murder and, in this case, the identification was made by a person who knew the offender well and who observed the offender in a well-lit room at close range.  There was no evidence that called into question the eyewitness identification or that impugned the motive or character of the eyewitness.  The jury

was instructed regarding the limited purpose of the Yarnell Brue statement, and the jury was also instructed that it was free to infer guilty knowledge on the part of the petitioner from the fact that he fled the area immediately after the occurrence of the shooting and evaded capture for several months, notwithstanding that an area-wide manhunt was ongoing.  The Court is convinced, therefore, that the jury would have reached the same result without consideration of the Yarnell Brue statement, even though the Court readily concedes that the statement was inflammatory and had the potential to prejudice the jury against the petitioner.  Such speculative effect, however, is not enough to create grave doubt in the mind of the Court regarding the validity of the jury's verdict.  As noted above, the erroneous admission of prejudicial evidence "does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).  Upon a finding that the jury would have reached the same conclusion without the admission of the Yarnell Brue statement, the Court is unable to conclude that the petitioner was prejudiced in fact by its admission at trial.

## Certificate Of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable

whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original).  In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

      In the instant case, the Court finds that reasonable jurists would not debate the correctness of the denial of the petitioner's § 2254 claims that are based upon procedural default.  As to the rejection of the petitioner's claims on substantive grounds, however, the Court finds that "jurists of reason could disagree with the district court's resolution of his constitutional claims or ... could conclude the issues presented are adequate to deserve encouragement to proceed further."  Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be granted with regard to the issue whether the admission of the handwritten statement purportedly made by Yarnell Brue may be seen to have been error of such magnitude as to result in "grave doubt" that the error was not harmless in light of the totality of the evidence at trial.

## **RECOMMENDATION**

      It is recommended that the petitioner's application for habeas corpus relief be denied and that this proceeding be dismissed.  It is further recommended that in the event that the petitioner pursues an appeal in this case, a certificate of appealability be granted with regard to the issue whether the admission of the handwritten statement purportedly made by Yarnell Brue may be

seen to have been error of such magnitude as to result in "grave doubt" that the error was not

harmless in light of the totality of the evidence at trial.

      Signed in Baton Rouge, Louisiana, on February 16, 2016.


           **RICHARD L. BOURGEOIS, JR.**
           **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRANDON BRUE (#507020)**                                  **CIVIL ACTION**

**VERSUS**

**BURL CAIN, WARDEN**                                  **NO. 13-0060-JWD-RLB**

## NOTICE

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

      ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

      Signed in Baton Rouge, Louisiana, on February 16, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**